In re MONTAGUE ST. IN CITY OF NEW YORK.

Appeal of PUBLIC SERVICE COMMISSION et al.

(Supreme Court, Appellate Division, Second Department.    November 19, 1915.)

1. EMINENT DOMAIN ⊜⟶247—AWARD—INTEREST—TIME OF SEIZURE.
    Under Rapid Transit Act (Laws 1909, c. 498) § 47, providing that on
filing the oath of the commissioners the city shall be and become seised
and possessed in fee of all property condemned, described in maps or
plats and memoranda as required by the act, the owners of the con-
demned property are divested when the oath of the commissioner is filed,
and he becomes entitled to interest on the compensation from such date.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 638–
643; Dec. Dig. ⊜⟶247.]

2. EMINENT DOMAIN ⊜⟶194—CONDEMNATION PROCEEDINGS—AMENDMENT—
    ALLOWANCE OF INTEREST.
    There being no distinction under the Rapid Transit Act between con-
demnation by the filing of original maps and condemnation by amended
maps, the court under such act has no power to impose, as a condition
to allowance of amendment whereby additional land is taken, the pay-
ment of interest from the commencement of the original proceeding.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 523;
Dec. Dig. ⊜⟶194.]

3. EMINENT DOMAIN ⊜⟶194—RIGHT OF CONDEMNATION—AMENDMENT.
    Where the purpose of condemnation is a public one, the Public Service
Commission has the absolute right to seize property under Rapid Transit
Act, either by the initiation of the original proceedings, or by amendment
during its progress, so as to include property not originally described.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 523;
Dec. Dig. ⊜⟶194.]

4. EMINENT DOMAIN ⊜⟶194—AMENDMENT—STATUTE OF JEOFAILS.
    Code Civ. Proc. § 723, providing that the court may at any stage of the
action, in the furtherance of justice, allow amendments, having no appli-
cation to matters of legal right, does not apply to the amendment of emi-
nent domain proceedings, whereby additional land is included.
    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 523;
Dec. Dig. ⊜⟶194.]

Appeal from Special Term, Kings County.

Condemnation proceedings by the Public Service Commission of
New York City.    From an order allowing interest on the compen-
sation awarded, the Commission appeals.    Reversed.

See, also, 168 App. Div. 932, 152 N. Y. Supp. 1138; 88 Misc. Rep.
693, 151 N. Y. Supp. 430.

Argued before JENKS, P. J., and STAPLETON, MILLS, RICH,
and PUTNAM, JJ.

Charles J. Nehrbas, of New York City (Terence Farley and Louis
C. White, both of New York City, on the brief), for appellants.

William N. Dykman, of New York City, for respondents.

STAPLETON, J.    The order from which the appeal is taken con-
tains this decretal recital:

"Ordered that said application of the Public Service Commission for the
First District of the state of New York to amend this proceeding be and the
same hereby is denied, unless the petitioner stipulates that, in case any award

⊜⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shall be made in the proceeding to the Messrs. Pierrepont for their property sought to be condemned in this proceeding, interest shall be allowed on such award from March 11, 1914, instead of from the date of the vesting of title in the city of New York, and upon the filing of such a stipulation said motion be and the same hereby is granted."

The application denied, unless there is a compliance with the specified condition, is that of the Public Service Commission for the First District, to amend a proceeding, previously instituted, to condemn lands at the foot of Montague street in the borough of Brooklyn for the purpose of a rapid transit railroad, by including contiguous real property not originally included in the proceeding. It was the intention of the Commission to take this property, but a description of it was by error omitted from the original map, plan, memorandum, and petition. All the land involved is situate within the lines of Montague street from a given point, and within those lines projected under water to a pier head line. The property is privately owned. The respondents claim ownership of the entire property. The parcel sought to be acquired through the amendment is an insignificant part of the whole. The learned court at Special Term has ordered that before the city can add this parcel to the property taken it must stipulate to pay interest for the period of time fixed, not only on the award for the strip affected by the amendment, but upon the award for the entire property.

[1] The claim of the respondents that, in view of the circumstances hereafter recited, they should in some manner and to some extent be compensated for the loss sustained in interest on the value of their property, or for the use and occupation of it, was heeded by the learned Special Term. The proceeding was brought under the Rapid Transit Act (chapter 4 of the Laws of 1891, as amended by Laws 1909, c. 498). The original order appointing commissioners of appraisal was entered on the 1st day of February, 1915, and on the 8th day of that month each commissioner took and filed his oath of office. The title to the property specifically described in the memorandum attached to the original petition thereupon became vested in the city of New York in accordance with the provision of section 47 of the Rapid Transit Act. The respondents were the persons divested of that property. They became entitled to interest on the value of it from that date. Section 47, Rapid Transit Act, ut supra.

[2] Prior to the institution of this proceeding, the Public Service Commission and the owners were negotiating for the sale and purchase of the property by agreement. Before title vested in the city, the Commission, without license, entered upon the property to construct a rapid transit railway. The continuance of the trespass was enjoined in an action brought by the property owners. The operation of the injunction was suspended by stipulation pending negotiations. The respondents fenced the property on the 14th day of March, 1914. A street opening proceeding was instituted upon the theory that the property could be acquired for street purposes. The undertaking failed. Negotiations for a private sale were resumed. The negotiations were fruitless, and the experience of the property owners was doubtless

irritating. This motion was then made. Many of the facts recited are not pertinent, unless the court, in granting the application, has power to impose terms or conditions, and to include in those terms and conditions interest on the award to be made to respondent for a period antedating the vesting of title. If the court has the power, we have no disposition to disapprove of the manner in which, or the extent to which, it used the power..

The court has no power unless it is conferred by statute. Matter of Willcox (Fourth Avenue Subway), 213 N. Y. 218, 221, 107 N. E. 499; Matter of Trustees, etc., 137 N. Y. 95, 98, 32 N. E. 1054; Matter of the Mayor, 34 App. Div. 468, 54 N. Y. Supp. 295. We have vainly searched the Rapid Transit Act, ut supra, for a provision conferring the power to impose terms or conditions upon granting this application. Certainly no such power is conferred by section 59 of the act. Section 40 of that act provides that:

"The Commission [i. e., the Public Service Commission] shall cause three similar maps or plans to be made of each parcel of property which it may deem necessary so to be acquired, * * * and upon each map or plan so made or in a memorandum accompanying the same and to be deemed part thereof the Commission shall cause to be clearly indicated the particular estate * * * to be acquired. * * * The Commission shall have power to cause a triplicate set of maps or plans and memoranda as herein provided for to be made as often and at such times as said Commission shall determine. * * * The Commission may from time to time make and file further maps or plans and memoranda amending those already filed, but not so as to defeat or impair any property or interest which shall have been already acquired, or to revive any interest or right which may have been already extinguished by the said city."

It is then provided in section 41:

"Wherever and as often as the Commission shall deem it to be necessary and proper that the said city should acquire any such property and shall have caused to be made, as provided in the last preceding section, the maps or plans and memoranda specifying and defining the said property to be acquired, * * * the Commission may direct the counsel to the corporation * * * to take legal proceedings to acquire the same for the said city, and the said counsel to the corporation * * * shall thereupon take legal proceedings as in this act provided."

Then follow provisions concerning the disposition of the maps (section 42), the petition and its contents (section 43), the notice of intention to make application (section 44), and then in section 45 it is provided:

"At the time and place mentioned in said notice, * * * the court, upon due proof to its satisfaction of the publication aforesaid, and upon filing the said petition, shall make an order for the appointment of three disinterested freeholders, residents in said city, as commissioners of appraisal, to ascertain and appraise the compensation to be made to the owners of property so to be taken or extinguished for the purposes indicated in this act."

Section 46 provides for the taking and filing of an oath by the commissioners so appointed. In section 47 it is provided:

"On filing said oath in the manner provided in the last section, the said city shall be and become seised and possessed in fee or absolute ownership

of all those parcels of property, * * * which are in the maps or plans and memoranda referred to in section 40 of this act, described as parcels of property, * * * which are to be acquired."

It is to be observed that the power of the commissioners to prepare original maps of lands to be acquired, and the power to amend those maps, are found in the same section (section 40). All the provisions concerning the procedure to condemn the property shown on these maps (both original and amended) follow this section. There is thus in the statute no distinction whatever between the condemnation of the property shown on the original maps and that shown on amended maps. The power to amend is placed on the same footing as the power to condemn.

[3] The purpose being public, and compliance with the requirements of the statute being shown, the right of the Commission to condemn property, either at the initiation of the proceeding, or, by amendment, during its progress, including property not originally described, may not be destroyed by denial nor impeded by the imposition of conditions. It is absolute. Matter of Willcox, ut supra, 213 N. Y. 225, 107 N. E. 499; Matter of City of New York (Nostrand Avenue), 163 App. Div. 10, 12, 147 N. Y. Supp. 1057.

[4] The respondents argue that under the provisions of the statute quoted the power of amendment is limited solely to the maps and plans filed, that there is no authority whatever to amend the petition or proceedings in court, and that for such authority the appellant must look to the jeofail section of the Code of Civil Procedure, § 723. That section has no application to matters of legal right; by its terms it involves discretion. We have quoted the provision of the Rapid Transit Act to show that all provisions concerning procedure to condemn property are so related to section 40 of the act, which makes no discrimination between original and amended maps, plans, and memoranda, as to indicate the legislative intention to make no distinction between the power to condemn by original act and the power to condemn by amended act. Cases conducted under the condemnation law are not guiding in this proceeding, instituted under an act which provides a complete, independent plan for the acquirement of property in invitum. Section 3383, Code of Civil Procedure; Matter of Low, 208 N. Y. 25, 30, 31, 101 N. E. 706; Matter of City of New York (Nostrand Avenue), 163 App. Div. 10, 11, 147 N. Y. Supp. 1057.

The order should be reversed, with $10 costs and disbursements, and the motion granted, without costs. All concur.